WILLIAM C. GRIFFIN V. STATE.

No. 26,553. November 11, 1953.

Bourne and Lovell, Dumas, for appellant.

F. H. Richards, District Attorney, Dalhart, and Wesley Dice, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is the fondling of the breast of a female under the age of 14 years, a violation of Article 535d, P. C.; the punishment, 25 years.

The prosecutrix testified that she was 12 years old; that appellant was a friend of her mother and father and visited in the home quite often; that she and Leota Gee and Cora Lee Scott on several occasions had gone riding with the appellant in his automobile; and that he had permitted them to drive his automobile. She testified that on the day prior to the incident upon which this prosecution is based the appellant had shown her certain pictures. This assortment of pictures was introduced in evidence and depicted the appellant completely nude in acts of intercourse with two different nude women. The record does not disclose the identity of the women.

Prosecutrix stated that on the day following the exhibition of the pictures she and Cora Lee Scott went for a ride with the appellant and that while in the city of Dumas the appellant instructed the girls to "scoot down" in the automobile so that they would not be seen by a passing policeman, after which they drove out into the country where the appellant brought his automobile to a stop. She stated that appellant began to discuss the pictures and asked them if he might do to them what he was doing to those women in the pictures and take pictures while it was being done. At this juncture, according to the witness, the appellant placed one hand in the area of her private parts

and the other around her shoulder and caught hold of her right breast. After this the appellant reached over and put his hand down into Cora Lee's blouse and took hold of her breast. She stated that appellant reached down and start unbuttoning his pants; whereupon, she and Cora Lee jumped out of the automobile.

Prosecutrix testified that she and Cora Lee sat upon the fenders of appellant's automobile, not wishing to get back in the same with him; that appellant started up the automobile; and that a short while thereafter she fell off and broke her leg. She stated that on the way to town she was instructed by appellant to give a false report as to how her leg had been broken; that Cora Lee and the appellant did make such false report in her presence; but that she told her mother and the police the truth later in the day.

Cora Lee Scott testified that she was 13 years old; that she had known appellant for approximately a month before the day in question; that she had been riding with him and other girls on several occasions; that appellant permitted her to drive his automobile; that on the day prior to the day charged in the indictment the appellant had shown Jean Evelyn (the prosecuting witness) and her the pictures which were introduced in evidence; that the next day she and Jean Evelyn had gone for a ride with appellant and had hidden from the police officer at appellant's suggestion; that appellant asked them if they had liked the pictures and if they wanted to do what was being done in the pictures. The witness stated that as soon as the automobile came to a halt appellant put his arm around Jean Evelyn and put his hand over her breast; that after this he put his arm over around her, put his hand in her blouse, and took hold of her breast, and then began to rub his leg, at which juncture she looked the other way and continued to look out the window until she and Jean Evelyn got out of the automobile. The witness stated that Jean Evelyn told her she was not going to get back in the automobile; that they both seated themselves on the automobile fenders, and when appellant started forward her companion fell off and her leg was run over by the automobile. She stated that appellant had instructed them to say that Jean Evelyn had been injured in town by an out-of-state automobile and that appellant had appeared upon the scene after the injury and that she had so reported until she became separated from the appellant, at which time she immediately reported the truth to the investigating officer.

Police Chief Bowen testified that when he arrived at the hospital while the prosecuting witness was being x-rayed the appellant and Cora Lee Scott told him that Jean Evelyn had been run into by a light colored automobile behind the Star Theater, but that as soon as he took the Scott girl in a separate room she had volunteered the information that her first report had been false.

Bowen further testified that he arrested appellant; that the appellant directed him to the scene of the accident; that the appellant executed a written permission for the officers to search his apartment; that they had done so and found therein the negatives of the pictures which were introduced in evidence.

The appellant offered the witness Leota Gee, a young married woman, who testified that she had known the appellant for some time prior to her marriage and that he had never made any indecent advances toward her, and that Jean Evelyn had given her conflicting versions of the incident involved in this prosecution and at one time told her that appellant had done no more than place his hand upon her leg. She testified that she and Jean Evelyn had ridden on the fender of appellant's automobile on several occasions.

The appellant offered Jean Evelyn's father, who testified that since the incident charged in the indictment Jean Evelyn had told him on several occasions that the appellant "had not laid a hand on her" and that she had been playing on the front fender of appellant's automobile and had jumped off and that the appellant had been unable to avoid running over her.

In rebuttal of the witness Leota Gee, the state introduced a witness who testified that he had seen the Gee girl and the appellant together in an act of intercourse several months prior to the date of the alleged incident.

The jury resolved the issues of fact against the accused, and we find the evidence sufficient to support the verdict.

We shall now discuss the contentions raised by appellant's counsel in his brief.

Bill of Exception No. 1 relates to the introduction of the pictures in evidence. Appellant's objection thereto was as follows:

"There hasn't been any proper predicate laid to show where the pictures have been and we object to them for the reason that they were taken from the defendant's private residence without a search warrant in violation of the Constitution and the laws of the United States and the State of Texas, Article 727-A of our Code of Crimnal Proceedure; further, even though the State maintains that they are of an evidentiary value, they are not the proper means of proof in connection with this alleged offense; and further, the State will probably maintain that the defendant gave permission to search his house, that the search was unlawful for the reason that he was under arrest and it was an unlawful arrest and it was in violation of Article 727 of our Code of Crimnal Proceedure unless it shows that the proper warning was given to him as required by Statute; that it was inflammatory and prejudicial."

Prior to the search of appellant's apartment, the officers secured from the appellant written permission to make the search. Such permission is not a confession, and no warning is necessary.

The question of chain of custody is not in this case. The state was unable to secure the actual prints that had been exhibited to the girls, but did search the appellant's apartment and found the negatives. These in turn were developed, and such prints were exhibited to the girls on the witness stand. Both girls were emphatic in their statements that these were the same pictures which had been exhibited to them by the appellant prior to the commission of the offense charged.

Appellant relies upon the holding of this court in White v. State, 137 Tex. Cr. Rep. 481, 131 S. W. 2d 968. In that case, after the appellant had assaulted the young girl with intent to rape her the arresting officer found on his person certain lewd pictures similar to those involved in this prosecution. In that case we said:

"Had the exhibition of this book been utilized in any way by appellant in his alleged offense, that is, had he shown the same to the little girl for any purpose, such as to excite her sexually, then we are of the opinion that its exhibition before the jury would have been proper."

This statement, we think, is determinative of the question here before us.

Bill of Exception No. 2 complains of the sustaining of the

state's objection to the following question asked the prosecuting witness on cross-examination, to-wit: "Isn't it a fact that you got a Four Thousand Dollar Judgment out of the Court here?" The question was not answered. We are not at liberty to paraphrase this question to read: "Isn't it a fact that you got a $4,000 judgment against this appellant based on this offense about which you are now testifying?

Bill of Exception No. 3 relates to the testimony of Police Chief Bowen in which he related his conversion with Cora Lee in the hospital room out of the presence of the appellant. As has been noted, Cora Lee gave the investigating officer an untrue account of how Jean Evelyn had been hurt so long as she was in the presence of appellant. The officer testified that the minute he took her into another room she volunteered the information that she had not been telling the truth and gave a correct account. This, we think, was properly admitted as a part of the res gestae of the entire transaction. This court has recently had occasion to discuss the res gestae rule as applied to a girl of tender years who remains quiet while in the company of her assailant and then makes her outcry as soon as she escapes from his presence. See Haley v. State, 157 Tex. Cr. Rep. 150, 247 S. W. 2d 400.

Bill of Exception No. 4 complains of the testimony of Chief Bowen in which he told of taking the accused to the scene of the accident. The objection was that the appellant was under arrest at the time. We have carefully studied the record referred to in the bill of exception and find therein no mention of the act which forms the basis of this prosecution. The appellant merely took the officers out in the country and pointed out to them where he had run over the leg of the prosecuting witness.

We think Robinson v. State, 142 Tex. Cr. Rep. 636, 155 S. W. 2d 811, is in point here. There, a diagram of a room was admitted in evidence. We said, in effect, in that case that there was nothing about the diagram that said "this is the room in which I committed the offense."

Bill of Exception No. 6 complains of the failure of the court to instruct a verdict of not guilty on the grounds that both girls were accomplices and their testimony had not been corroborated.

The trial court charged the jury fully as to accomplice testi-

mony, applied it to each girl, and told the jury that one accomplice could not corroborate the testimony of another accomplice.

Jean Evelyn might have been an accomplice if it had been shown that she willingly permitted the fondling of her sexual parts and that she had discretion sufficient to understand the nature and illegality of the act.

Each girl might be an accomplice if she had such discretion and gave aid to the accused by voluntarily making false statements to enable him to avoid arrest and trial.

We shall discuss each possibility in the order stated.

In Young v. State, No. 26,550 (this day decided), (page 302 of this volume), we held that one boy could not be an accomplice to an act of perversion upon another done in his presence unless his relationship to the parties or to the offense on the other boy would render him accountable under the law as a party to such crime. Such a rule applies with equal force to the case before us. Cora Lee's presence while the offense was committed upon Jean Evelyn would not in itself alone render her accountable under the law as a party to such crime, which we believe is the test in determining whether she is an accomplice witness.

We proceed now to a consideration of the false statements made by and in the presence of the girls concerning the injury to Jean Evelyn's leg. As stated earlier, on the way back to town the appellant told both girls to report that the accident had occurred in town and that he had appeared on the scene after it had occurred. From the state of the record, it does not appear that the appellant was guilty of a criminal offense in causing Jean Evelyn's leg to become broken. When they arrived at the hospital appellant gave the untrue version of the leg injury and was supported in a measure therein by Cora Lee. Jean Evelyn remained silent. No mention was made of the fondling, and it appears that at this juncture the investigating officer knew nothing of it.

We cannot bring ourselves to believe that this untrue account of the leg injury given by Cora Lee to the investigating officer made her an accessory to the crime of fondling and thereby made her an accomplice witness thereto as a matter of law.

By motion in arrest of judgment appellant raised the ques-

tion of the sufficiency of the indictment on the ground that the indictment failed to allege that the prosecuting witness was not the wife of the accused. That is, he contends that the indictment should have negatived the statutory exception set forth in Section 2 of Article 535d, P. C. Such section reads as follows:

"The provisions of Section 1 of this Act shall not apply to the enumerated acts where the purpose of the person committing such act or acts is to render medical or surgical treatment, or to determine the need for medical or surgical treatment, or to cleanse such sexual part, or when the persons are married legally one to another."

Judge Lattimore, in Baker v. State, 132 Tex. Cr. Rep. 527, 106 S. W. 2d 308, made careful study of the question here presented. We quote from the opinion of the court:

"From what we have said above, and as far as we have been able to ascertain, our courts have uniformly held that when the Legislature sees fit to create exceptions to the general penal provisions of a statute, if such exceptions be placed in a separate section or article from the one containing the definition of the offense, or if they be not such as to be essential to the definition of the offense, it will not be necessary to negative such exceptions in the indictment charging such offense . . . .

.   .   .   .

"If, however, the exception be of such form and character as that a prima facie case could be made out against the accused for the violation charged, without proof of the omission or exception, then clearly the Legislature might by enactment have placed such exception in a separate article or section and there is no need for their negation."

This rule, we think, disposes of the question raised by the motion.

Finding no reversible error, the judgment of the trial court is affirmed.