## THOMAS HALEY V. STATE.

No. 25583. February 6, 1952.
Rehearing Denied April 2, 1952.

Hon. Willis M. McGregor, Judge Presiding.

*Joe J. Johnson, Jr.*, Ft. Worth, for appellant.

*Stewart W. Hellman,* Criminal District Attorney, *W. H. Tolbert* and *John E. McLean,* Assistants Criminal District Attorneys, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant, a married man and the father of a 4 year-old son, was convicted for the rape of a 4½ year-old girl, and the jury assessed his punishment at death.

According to the state's evidence and to appellant's confession, the admission of which is not attacked on this appeal, appellant went to the home of Mrs. Hammerschmidt about midnight to await her return from a night club. He found her two children there, a 14 year-old boy and the 4½ year-old victim, who had retired. He invited them to go with him to get something to eat. The boy declined, but the little girl put on her dress and left the house with him.

Instead of going to the cafe, he carried the child under a bridge some five or six blocks from her home. He confessed that he put his finger in her private parts, then put his male organ against her privates and finally penetrated her female parts to the extent of at least a half-inch but was unable to enter further because of her size.

He then took her home about 1:30 A.M. The mother arrived

in the meantime and she put the child in bed with her and appellant remained there until about 9:30 the following morning.

Dr. Horace Kibbie, a physician and surgeon, testified that he examined the child victim about noon the following day. He described the dilated, torn and lacerated condition of her vagina, and from his examination and observation expressed the conclusion that she had definitely had a recent act of intercourse.

Appellant's defense was insanity. He also sought to have the punishment mitigated by showing temporary insanity produced by the voluntary, recent use of intoxicating liquor.

As a witness in his own behalf, he testified that he had been drinking heavily on the night in question and remembered nothing from the time he carried the little girl to the bridge until he awoke the following morning at her home. He explained the statements found in his confession, to the effect that he ravished the child, by saying that he was told that the doctor had found that she had been ravished and that he must therefore have done it.

Mrs. Hammerschmidt, the mother of the little victim, testified that when appellant brought the child home she noticed that she looked tired and had been crying. She said she saw blood on her legs and clothing and asked what was wrong. Appellant remained there until the following morning, and as he left, the mother again inquired of the child as to what had happened. As appellant was going out the door, the child said, "Wait a minute Mamma until Tommy goes and I will tell you."

Mrs. Hammerschmidt was then permitted to testify, over appellant's objection, to the following conversation with her daughter:

"I said, 'tell me what happened' and she said, 'Tommy asked me to go for something to eat and he hurt me.' I asked her what he did. She told me that Tommy had taken her * * * he took her under the bridge and she told me that he had played nasty with her, and I asked her what he did and she told me that he used his finger on her and hurt her."

The statement of the child made immediately following appellant's departure was admissible as res gestae.

A more serious question is presented regarding the testi-

mony admitted over objection as to the child victim's statements made to members of the Copeland family, who lived nearby.

According to the record, the mother did nothing upon being informed by the child of appellant's acts of perversion which injured her. The child appears to have then sought out the Copelands, who had been caring for her while her mother was working.

Upon arriving at the Copeland home, the ladies there present noticed that the child was nervous and squirming and appeared to have something on her mind she wanted to say.

The ladies present were permitted to testify, over appellant's objection, that in answer to the inquiry of one of them the child said: "You know that guy, Tommy? He did something awful to me. He put his finger up me and made me bleed."

Asked if that was all he did, the child victim replied, "No, he put his old thing up me."

And the ladies further testified, over objection, that the child said that it hurt her; that appellant put his hand over her mouth and told her to shut up and she started crying.

It is appellant's contention that the statements of the child to the Copelands was hearsay and not admissible as res gestae, and he stresses the fact that the child was not permitted to testify and was not a competent witness because of her immaturity.

It appears that the child victim was still suffering from the horrors of her experience at the hands of the appellant, as well as the neglect to which she was subjected because of his presence, until a short time before she wandered to the home of her protectors.

In Williams v. State, 145 Tex. Cr. R. 536, 170 SW(2) 482, 490, we said:

"Here, a 4½ year-old girl is, in the dead hours of the night, forcibly removed from her home and bed. Shortly thereafter, she is found outside and near the residence of a neighbor, crying. She has been bruised, choked, and assaulted by someone. The condition of her neck and throat is such that she cannot

talk to the person who finds her. She is, within a short time after she is found, carried home to her parents. To those who carry her home she does not talk. Upon arriving home, and when her mother and father make inquiry, she, for the first time, makes the statements and declarations as to what has happened to her, and who her assailant is. A child of the tender age of this one could hardly be charged with knowing the nature, extent, or seriousness of what has happened to her, or of the crime perpetrated. The natural and human thing for a child of the age of the prosecutrix to do, under the same circumstances, is to do as the prosecutrix did on this occasion, that is, in childlike manner, tell her parents what had happened to her. The fact that prosecutrix was not more definite or explicit in her statements and in the identity of her assailant tends strongly to disprove the idea that what she said to her parents was the result of thought or premeditation, but to the contrary, demonstrates that what she said was the act speaking through her."

The evidence here shows that the child victim was not receiving proper parental care from her mother, but was in a large measure dependent upon the Copelands for protection and care. Appellant appears to have been a welcome guest in her mother's home even after the unfortunate child was known to have been mistreated or injured by him.

Under the facts found in this record, the trial court was warranted in his conclusion that the declarations were the natural acts of the 4½ year-old child and admissible as res gestae.

Further, under appellant's testimony and the state's evidence as to the condition of the child, the report of the child to her mother and to the neighbors appears to have been to the same effect as testimony heard by the jury to which no objection was made, and would not authorize or require reversal,. though the child's declaration be hearsay.

Bill of Exception No. 8 complains that, over his objection, the panties and dress of the child victim which were "obviously bloody," were admitted in evidence.

The qualifications to this bill show that the trial court declined to certify that such exhibits were not proof of any material issue, but certified that the exhibits were offered in good faith and were "proof of a very material issue since the de-

fendant was charged with rape and entered a plea of not guilty and later testified that he had no recollection of the occurrance."

The qualifications further show that the only objection offered by appellant at the time the exhibits were offered was, "I don't think the identification has been complete. The child that wore them didn't testify to it, and it would be a substitution."

This bill, as qualified, shows no reversible error.

Bill No. 9 complains that the panties and dress were "displayed" to the jury at close range by the district attorney who said, "Gentlemen, I dislike doing this, but I would like to exhibit to you the condition of these pants, as well as the dress. I would be glad to hand them to you if anybody wants to look at them."

This bill is qualified in much the same manner as Bill of Exception No. 8, the trial court further certifying that no objection was made to the display. As qualified, no error is shown by this bill.

Bill No. 10 complains of the overruling of appellant's motion for mistrial because of the introduction of the clothing.

This bill has the same qualifications as Bills of Exception Nos. 8 and 9, and shows no error.

Bill of Exception No. 11 relates to the action of the trial court following the overruling of appellant's motion that a mistrial be declared, in instructing counsel for the state not to display the clothing to the jury for them to examine, but to leave the exhibits on the table where they had been since originally introduced in order that counsel might have them examined by witnesses, if the occasion should arise.

The instructions were given by the trial judge in the absence of the jury, and we see no harm to appellant in the court's actions.

Bills of Exception Nos. 12 and 13 complain of the testimony of the ladies present at the Copeland home relating to the result of their examination of the child victim and the injuries they observed.

We see no merit in this bill. The witnesses were properly permitted to testify as to the condition of the child's private parts which they observed.

Bill of Exceptions No. 15 complains that during the trial the child victim was brought into the courtroom and identified by her mother, who was at the time testifying on direct examination.

Though the child was not competent to testify, the jury was entitled to know the age, sex, size and appearance of the child alleged to have been ravished and we find no error in the procedure followed.

We overrule appellant's contention that the punishment assessed was cruel, unusual or excessive. The punishment was for the jury, and the evidence sustains their verdict.

The trial court fairly submitted appellant's defense of insanity and the law regarding temporary insanity produced by the recent voluntary use of alcoholic liquor, but the jury rejected the defense and declined to mitigate the punishment because of intoxication, as was their right.

Court appointed counsel for appellant are to be commended for their diligence in the presentation of appellant's defense on the trial and his contentions on appeal.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant forcefully presents, both in a well-prepared brief and in able argument, his contention that we erred in holding admissible the two different statements made by the injured child.

In this case, we have a factor which seems not to have been emphasized in any of the cases coming to our attention, but which we think is of vital importance. The injured child remained in the presence of the man who had ravished her until shortly before she made the statements. This was because her

mother permitted him to spend the night with her and in the same bed with the injured child. The passage of time, under such circumstances, would, as we see it, intensify the fear engendered by the attack rather than alleviate it. Can we imagine the state of mind of a child of such tender years who had been so brutally attacked and then forced to lie in the same bed with her attacker for the remainder of the night, fearing, it is reasonable to assume, that the attack might be repeated?

It is obvious that the child was afraid of appellant, as evidenced by the statement made to her mother the following morning, in which she refused to disclose what had happened until appellant had left. From what had happened, his very presence implied the threat to injure.

Appellant contends that there can be but one spontaneous outcry from an injured party. To so hold would reduce the law to the rule of mathematics. If the element of spontaneity exists at the time each outcry is made, we can conceive of no valid reason why the same should not be admissible. Here, the child reported the attack to her mother, who, it must have seemed to the child, received the same lightly; thereupon, she went at once to her neighbors, who had cared for her to such an extent that their relationship had become almost one of locus parenti, and revealed to them her troubles. Under the circumstances, we feel her statement to them to be admissible.

The statement, in our original opinion, that a reversal of this cause should not follow even if the child's statements were to be considered as being hearsay, may be fortified, in addition to what we said there, by observing that appellant testified in his own behalf and did not deny that he had ravished the child or contradict the confession as to the commission of the offense in any manner, but merely said that he did not remember whether or not he had done so. Illustrative of his testimony, on cross-examination by the state, the record shows that he said:

"In answer to your question, 'You even told Howerton you were sorry about this thing but it had happened,' my answer is, 'Yes, sir.' I didn't deny it to them."

Appellant complains that the mother was permitted to recount that the injured child had answered an inquiry while the appellant was still present about what had happened to her by saying, "Wait a minute, Mamma, until Tommie goes and I will tell you." As we have heretofore observed, this statement was

158

the best possible evidence to show that the child was afraid of appellant and lent credence to the report she made after he had left.

Appellant last says that error was committed when the injured party, though not a competent witness, was called into the court room so that her mother, who had already testified as to her sex and age, might identify her in the presence of the jury. We find, from the record, that the child immediately left the court room after this was done. There is no showing that anything further occurred, nor is there any indication in the bill that appellant was prejudiced thereby.

In our original opinion, we held the procedure as to identification of the injured child proper. Appellant's contention now is that such evidence was cumulative of other evidence on the question of her age and sex. The fact that such evidence was cumulative does not militate against its admissibility. Johns v. State, 155 Tex. Cr. R. 503, 236 S. W. (2d) 820; Beard v. State, 146 Tex. Cr. R. 96, 171 S. W. (2d) 869.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.