HENRY PERSHING HEFLIN V. STATE

No. 27,352.   January 26, 1955

*Robert B. Billings,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *Charles S. Potts* and *Jerry Shivers,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for the offense of fondling, as defined by Art. 535d, V.A.P.C.; the jury having assessed the maximum punishment of 25 years in the penitentiary.

Appellant's confession was admitted in evidence and reads as follows:

"About 10:30 A.M. today, 3-29-54, I got out of bed and went to the bathroom and drank about 1/8th of a bottle of Bourbon Deluxe whisky and left the empty bottle in bathroom waste basket, then I went back in my room and got dressed, I put on my painters overalls, I intended to go try to get a job, but instead I went to Bob Crows Restaurant across the street from where I live, I live at 4932 Columbia, I sat in there and drank beer until I used all the money I had, then I bought some on credit. About 2 or 3 o'clock, I left to take Mike Taylor, a friend of mine, home, then I came back by some big apartment building. I don't know where it is, I saw a woman sitting on the steps, I went around the block and parked right in front of where she was, I just parked there and watched her, after a while, she got up and went in the house, after she went in the house, I drove off, started to go into a little grocery store for cigarettes, it seemed like I drove about a block and a half from where this grocery store was, I saw a boy on a bicycle and a little girl. I spoke to the little girl and she spoke to me, I asked her to get in the car and I would buy her a coke or malt or anything she wanted, we had just gone around the corner when I reached over and put my hand on her private, she said 'you better stop or I will tell my mama', then I asked her to pull her pants down and she did. She was standing up in the seat of the car all this time. I was scared all this time because she kept saying she was going to tell her mama, we drove around all this time, I kept on driving until we finally were out in the country. She was crying all the time. I told her I was going to spank her if she didn't quit crying. I finally made her get out of the car where there was some goats in a field, then I drove back to where I live, I parked in front of my house and had a beer at Bob Crows then went in the house and changed clothes.

"Henry P. Heflin."

The state's evidence shows that the female child named in the indictment was some 3 years and 9 months of age at the time of the incident. Her mother was employed and the child was being looked after by her grandmother. She went out to play about 4 P.M., and soon thereafter a search was instituted for her and the police department was notified.

The mother returned from her work and shortly thereafter, at about 6 or 6:15 P.M., a police officer brought the child home.

Billy, ten-year-old uncle of the child, testified that he came from school on his bicycle and saw his little niece in front of their home. A car was parked there and the sole occupant, a

man, was talking to the child. Billy went into the house and some 10 minutes later found that the child had disappeared.

Clarence Burns, yard man and landscape worker, testified that as he was driving his car on an unpaved street in a thinly populated area he noticed a car in front of him and saw the man driving "set the baby out on the ground and give her a push." He testified further that the driver, after setting out the little girl, closed the car door, then drove for some 20 feet and threw her shoes out of the car, and speeded away "in a hurry."

The child "commenced hollering and screaming and stomping," and Burns pursued the car and observed the license plate. He succeeded in getting only two of the figures, but was able to identify the car as a gray Dodge, 1946 or 1947 model four door with a Tennessee license plate. He was unable to identify appellant as the driver of the car.

Burns reported what he had seen. Police officers had the child in their car when he next saw her and he was able to identify her. He pointed out to the police the place where she was put out of the car.

Appellant testifying in his own behalf admitted that the child was in his car and that he put her out at the place where he was seen by the witness Burns. He denied that he asked the child to get in the car or that he touched or molested her in any way.

He testified that he was drunk, "plastered," and related that he had recently arrived in Dallas from his home in Tennessee seeking employment as a painter and paper hanger; that on the day in question he drank whisky, beer and wine at the cafe referred to in his confession, and became drunk; that after driving his newly found friend home he stopped for cigarettes, during which time he concluded that the little girl got in his car; that thereafter he discovered the child in the car; that she kissed him on the cheek and put her arms around him and he tried to get her to get out of the car, and each time he threatened to put her out she would start crying and screaming; that he was afraid and tried to console her; that she was not frightened except when he was trying to get her out of the car and this was when she started the commotion; that he persuaded her to get out by attracting her attention to some goats — "she wanted a goat, and that is how she got out of the car. I helped

her out of the car and I shut the door, but I didn't push the little girl. I merely kept the door from hitting her."

Appellant denied any knowledge or recollection of other matters shown in his confession or denied the truth thereof.

The evidence shows that after being put out of the car, the child made her way across a field and to the home of Deborah Hulbert and her parents. She said she was lost.

The child remained at this home for some thirty minutes, when police officers responded to the call from Deborah and came for her. Her condition was described during this time as "She was scared and frightened" - - "She was quivering of the lips and her body was shaking, and she was frightened."

The child was returned to her home and, accompanied by her mother, was taken to Parkland Hospital. The police officer described her condition when he got there as follows: "She appeared to be, to me, that she had been crying and her little eyes were dilated, and her face was flushed, and she was in no condition to talk at that time when I arrived. She did not talk."

One of the errors assigned by appellant in his brief complains of the testimony of the child's mother in which she was permitted to relate that, while waiting for the doctor to arrive, she was alone with her daughter for the first time and had the following conversation with the child, which was offered and admitted as a part of the res gestae of the offense charged:

"I asked . . . what happened, and she didn't seem to want to talk about it at first, and then finally she told me that he told her to get in the car, and he took her riding, and he stopped the car, and he made her take her pants off, and then he touched her with his hand."

She was further permitted to testify that the child said he touched her with his hand "on her body," which term she explained the child had been taught to use and did use in referring to one's sexual parts; that the child further stated that the man touched her again, this time "with his body."

One objection addressed to this testimony was that it was hearsay and not the best evidence.

This objection was properly overruled, evidence admitted

under the res gestae rule being admissible as an exception to the hearsay rule or despite such rule. See Dickerson v. State, 155 Texas Cr. Rep. 600, 237 S.W. 2d 983; Williams v. State, 145 Texas Cr. Rep. 536, 170 S.W. 2d 482.

Another objection was that the four-year-old child was held by the court to be incompetent and was not permitted to testify, and the admission of the mother's testimony as to her declarations denied appellant the right of cross-examination.

The statements of the child were, as stated, offered and admitted as res gestae statements, and not as the testimony of the child at the trial. Under similar circumstances reports and statements of a four-year-old child were held to be admissible in Haley v. State, 157 Texas Cr. Rep. 150, 247 S.W. 2d 400. See also Jones v. State, 156 Texas Cr. Rep. 2, 238 S.W. 2d 529.

Appellant also complains that the testimony regarding the child's use of the word "body" to indicate sexual parts should not have been admitted. We see no error in the ruling by which the witness was permitted to show the meaning of the word used by her daughter as the child had been taught to and did use it.

Another informal bill relates to the admission of the testimony of the mother wherein she said that she observed the sexual parts of her daughter as she was being examined at the hospital and "it looked normal except it had one place on it that looked raw, maybe torn a little bit or scratched, raw - - inside her private sexual parts."

We see no error in this bill. The witness was properly permitted to testify to what she saw, the weight of the testimony being for the jury.

Nor do we agree with appellant's further contention that the state was under necessity to call the doctor as a witness to corroborate the mother's testimony. The charge being fondling, proof of physical injury to the child, or penetration of her sexual parts, was not an element of the offense. Had the appellant desired the testimony, we perceive no reason why he should not have called the doctor as a witness.

The contention is offered that the testimony as to the condition of the child while at the Hulbert home was improperly admitted as being too remote in time.

**46**

It is true that the child's condition could well have been caused by her being lost and deserted, whether she had been fondled or not. But the fact remains that her condition was due to the acts and conduct of appellant, who admittedly put her out of the car, and was admissible.

Appellant was shown to have worn a red shirt at the time of the incident and when first seen by one of the officers who was watching his car. He had changed shirts before his arrest, and the officer observing this asked and secured his permission to go to his room and get the red shirt.

The shirt was found in the room and admitted in evidence, over the objection that the appellant was under arrest; the consent or statement of appellant "Yes, it is all right" was inadmissible because not in writing, and that the search was illegal.

These objections were properly overruled. We know of no rule of law which prevents an accused, while under arrest, to consent to a search or that requires such consent to be reduced to writing. The consent to search was not a confession and Art. 727 C.C.P. has no application.

We have examined all other bills reserved and find no error which calls for reversal.

The evidence sustains the conviction and we find no reversible error.

The judgment is affirmed.