Wesley Dwight RICHARDSON,
Petitioner,

v.

Priscilla Kay GREEN, Respondent.

No. C–2366.

Supreme Court of Texas.

June 27, 1984.

Frank Maloney & Associates, Thomas A. Autry, Austin, for petitioner.

Zachry, Kearney, Hill, Shaw & Beatty, Tom L. Zachry, Fort Worth, for respondent.

POPE, Chief Justice.

Priscilla Kay Green brought suit and obtained a jury verdict terminating Wesley Dwight Richardson's parental rights to their son. The court of appeals in an unpublished opinion affirmed the judgment holding that hearsay statements of the child were admissible as exceptions to the hearsay rule and the evidence was sufficient to support the judgment. We reverse the judgments of the courts below and render judgment reinstating Richardson's parental rights.

Priscilla and Wesley, the parties to this action, were divorced in October 1979. Priscilla was appointed managing conservator of their son, and Wesley, as possessory conservator, was allowed visitation rights. Priscilla and Wesley had little trouble for more than two years in arranging the child's visits. In late January of 1982, however, Priscilla Green, then remarried, apparently suspected that Wesley had sexually abused the child during his weekend visits. Initially she obtained various equitable remedies to curtail Wesley's visitation rights, but after a hearing on the subject of sex abuse, Wesley's visitation rights were restored. In July 1982, Priscilla Green brought this action to terminate Wesley's parental rights, alleging that he had sexually abused his three-year-old son.

The child did not testify, but the evidence upon which the verdict was founded consisted wholly of what the child is reputed to have told his maternal grandmother, mother, stepfather, a caseworker for the Department of Human Resources, and an assistant county attorney. There is no corroboration of the testimony about abuse.

Wesley, the father, made and preserved objections that the statements by the child to those who testified were hearsay. We agree.

The child's grandmother testified that in late December 1981, she noticed that the child's rectum was inflamed and at that time he said that it hurt when she put her finger in his rectum while cleaning him. The grandmother testified that on a later occasion, the child told her that he could not tell her what he and his father did during the weekend visits because it was a secret.

The mother and her husband testified that the child, after a visit with his father on January 24, told them that it hurt his rectum when his father put his finger in it. The mother testified that she found bloodstains on the boy's underwear, so she immediately took him to Dr. Jones, the child's pediatrician. The record showed that Wesley had told the mother on January 23 that the child had diarrhea and had messed in his clothes. Dr. Jones examined the child and found no evidence of sexual abuse and that the presence of blood was consistent with diarrhea.

On January 25, after leaving Dr. Jones' office, the mother and grandmother took the child to see Mrs. Adams, a caseworker at the Texas Department of Human Resources in Fort Worth. Mrs. Adams, over objection, was also permitted to testify about statements that the boy made to her. Wesley later consented to the admission of a videotape of a later interview of the child by Mrs. Adams. He consented because he wanted to use the tape to impeach Adams' testimony that she did not ask the child leading questions.

Additional testimony came from an assistant county attorney. She was also allowed to testify that the child had told her the father hurt him when he "stuck his finger up my bobo."

In addition to his expert testimony that his medical examinations showed no signs of abuse, Dr. Jones also testified that he asked the child, while examining his rectum, "if anyone had ever done this to him

before, and he said no." Three clinical psychologists, Dr. Helge, Dr. Baker, and Dr. Bigler, were called as expert witnesses. Dr. Helge testified that although the young boy was nonresponsive to his questions regarding sexual abuse, he found nothing in the child's personality tests that indicated the child was a victim of sexual abuse. Dr. Baker interviewed and examined Wesley and found no sexual deviancy on the part of Wesley. At one point during his testimony Dr. Baker stated on the basis of his interviews with Priscilla, Wesley and the child, that he thought it was more probable than not that some abuse had occurred. Later, Dr. Baker admitted he had no firm belief that Wesley had abused the boy and that he was "not prepared to state Wesley had abused [the child]." Finally, Dr. Bigler testified that on the basis of his tests he found no tendency or inclination in Wesley toward sexual deviancy. He further testified that he had no reservations about allowing Wesley to retain his visiting privileges with the child. Like Dr. Baker, Dr. Bigler stated he had no firm belief that any abuse occurred. Dr. Bigler testified that "nothing that I saw in the test data or my interview with [Wesley]" justified terminating his parental rights.

■ Section 15.02 of the Family Code sets out the proof necessary for an involuntary termination of parental rights. First, there must be a finding that the parent has committed one of eleven enumerated acts and second, that the termination is in the best interest of the child. The trial court made those findings. The evidence in support of the findings must be clear and convincing before a court may render judgment for involuntary termination. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1980); *In re G.M.*, 596 S.W.2d 846 (Tex.1980).

I.

The mother, Priscilla Green, initially contends that the Texas Supreme Court does not have jurisdiction of this case, because the 1983 amendment of article 1821(3), Tex.

Rev.Civ.Stat.Ann., makes judgments of the courts of appeals final in all cases of child custody, support or reciprocal support. Priscilla argues that actions to terminate parental rights are child custody cases.

■■ There is a significant distinction between a custody suit and a termination action. Termination does not merely end the right of the parent to physical possession of the child, subject to modification; it is an action with constitutional dimensions, terminating forever the natural right which exists between parents and their children. *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex. 1976). The substantial difference between suits for possession of children and those to terminate a parent-child relationship as well as "the difference in proceedings" justifies the caution with which courts have characteristically considered termination cases. *Brokenleg v. Butts*, 559 S.W.2d 853, 858 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979). A judgment to terminate involuntarily a person's parental rights must be based on clear and convincing evidence and not on the Family Code standard of preponderance of the evidence applicable to custody cases. *Santosky v. Kramer*, 455 U.S. 745, 746, 747–48, 102 S.Ct. 1388, 1390, 1391, 71 L.Ed.2d 599 (1980); Note, *Standard of Proof in Parental Rights Termination: Santosky v. Kramer*, 36 Sw.L.J. 1069 (1982). *See* TEX. FAM.CODE ANN. § 11.15(b) (Vernon Supp.1984).

■■ Custody and termination actions are governed by separate chapters in Title 2 of the Family Code. *See* TEX.FAM. CODE ANN. chs. 14, 15 (Vernon Supp. 1984). If the legislature had intended the 1983 amendment to encompass all actions under Title 2 of the Family Code, it would have stated: "all cases of divorce, or suits affecting the parent-child relationship" instead of limiting the exclusion of jurisdiction to "or child custody, support, or reciprocal support." We therefore hold that Article 1821(3) does not include involuntary termination of parental rights actions and that the Supreme Court of Texas continues

to have jurisdiction to review court of appeals' judgments in such cases.

## II.

The court of appeals determined the grandmother's statements of what the child told her were admissible as present bodily condition and state of mind exceptions to the hearsay rule. While denying the probative value of these statements, the father does not attack their admissibility. Wesley disputes the court's holding that the child's alleged statements to the mother were admissible under the res gestae exception. The court of appeals was convinced that upon the child's return from his weekend visit he did not have sufficient opportunity to fabricate his response to his mother's question, and therefore the response was held admissible as res gestae.

■■ To be admissible as res gestae a statement must be shown to have been a spontaneous reaction to an exciting event, and there must be independent proof of the occurrence to which the statements relate; the statements themselves cannot be used to prove the exciting event. *Hartford Accident & Indemnity v. Hale*, 400 S.W.2d 310, 311 (Tex.1966); *Truck Insurance Exchange v. Michling*, 364 S.W.2d 172 (Tex. 1963). A hearsay statement by a small child may be admitted as res gestae if the usual requirements are shown, that is, the statement was a spontaneous utterance made under the immediate influence of an exciting event. *City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259, 262–63 (1944); *Bennett v. State*, 382 S.W.2d 930, 931 (Tex.Crim.App.1964). Spontaneity was not established. The alleged abuse preceded the statements by several days and the claimed spontaneous statement resulted from questions long after the event. No independent evidence supported the hearsay statement. Dr. Jones examined the boy's rectum the following morning and found no physical evidence of tearing, bruising or any evidence of sexual abuse.

■■ The court of appeals relies on *Haley v. State*, 157 Tex.Crim. 150, 247 S.W.2d

400 (1952), in holding the child's statements admissible as res gestae. In *Haley* the court of criminal appeals held the hearsay statements of a four-year-old girl to her mother the day after being raped were admissible under the res gestae exception. In *Haley*, however, the spontaneity and independent evidence tests were met by the assailant's confession to his acts of the night before and by the testimony of the examining physician that the girl definitely "had a recent act of intercourse" and that her vagina was "dilated, torn and lacerated." We do not have that kind of evidence here. Evidence which establishes only that the event *could have* occurred does not satisfy the requirement; it must be sufficient to support a finding that it *did* occur. *Hartford Accident and Indemnity Co. v. Hale*, 400 S.W.2d 310, 311 (Tex.1966). Consequently, the statements to Priscilla and her husband by the child upon his return home on January 24 were not admissible in evidence under the res gestae exception to the hearsay rule.

### III.

■ Wesley also urges the court of appeals erred in holding he waived his hearsay objections to Mrs. Adams' testimony of statements made to her by the child in their initial interview, because he later consented to the admission of a videotape recording of a second interview. The general rule is that error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Slayden v. Palmo*, 108 Tex. 413, 194 S.W. 1103, 1104 (1917); *New Hampshire Fire Insurance Co. v. Plainsmen Elevators, Inc.*, 371 S.W.2d 68, 72 (Tex.Civ.App. —Amarillo 1963, writ ref'd n.r.e.). The admission without objection to the videotaped interview was evidence of the actual dialogue between Mrs. Adams and the child and later Priscilla. This evidence was distinct from Mrs. Adams' testimony as to what the child told her while they were alone in her office prior to going to another room for the videotape session. The hearsay that Wesley objected to was Mrs. Ad-

ams' testimony of statements made to her by the child supposedly without any leading or solicitation on her part.

■ The subsequent videotaped interview is profuse with leading questions by Adams. The videotape shows the child merely responded to her leading questions and imaginative use of dolls representing the child and his father. Furthermore, the child's responses to questions on sexual abuse on the videotape were at best contradictory, unclear and, more often than not, negated the claim that his father had stuck something in his rectum. The court and jury did not get the same picture from Mrs. Adams' testimony of what was said in her office in the first interview as they did from the videotape of the second interview. *See Delhi Gas Pipeline Company v. Mangum*, 507 S.W.2d 631 (Tex.Civ.App.—Tyler 1974, no writ). Considering the highly prejudicial nature of Mrs. Adams' statements of what the child initially told her, we are of the opinion there is not sufficient similarity of the evidence to cause the error in admitting her testimony to be harmless.

### IV.

■ Wesley's final contention is a no-evidence point. When confronted with a no-evidence point of error, we are required to consider only that evidence which supports the finding and then in its most favorable light. *Shaefer v. Texas Employers Insurance Association*, 612 S.W.2d 199, 201 (Tex.1981). By excluding the hearsay testimony of Priscilla, her husband, and Mrs. Adams, there is no more than a scintilla of evidence to support the judgments of the courts below. The highly prejudicial and inflammatory nature of this improperly admitted hearsay exemplifies the importance of the rule against hearsay. In the absence of the hearsay testimony by Priscilla, her husband and Mrs. Adams, little, if any, probative evidence remains. The initial testimony of the grandmother that the boy said it hurt when she touched him, even in its most favorable light, is without probative force on the question of sexual

abuse by Wesley. Likewise, the child's response to his grandmother that what he and his father did was a secret does not rise to a scintilla of evidence that his father sexually assaulted him on weekend visits.

■ Not one of the doctors made a finding or had a firm belief that Wesley had in fact sexually abused his son. The bloodstained underwear is consistent with evidence that the child had diarrhea or possibly some lower intestinal problem. Dr. Jones testified that upon examining the boy, he found no evidence of sexual abuse to the boy's rectum. The remaining evidence, the videotape interview and the testimony of the assistant county attorney, that the boy told her his father stuck his finger up his "bobo," is hearsay. The fact that the out of court statements, in the former instance, were presented in court through a recording rather than through another witness, does not affect its hearsay status since the statements were not made under oath and were not subject to cross examination. *See McIntyre v. Reynolds Metal Co.*, 468 F.2d 1092, 1094 (5th Cir. 1972). Prior to the adoption of Rule 802, Texas Rules of Evidence, (effective September 1, 1983), inadmissible hearsay would not support a judgment even when admitted without objection. *Aquamarine Associates v. Burton Shipyard*, 659 S.W.2d 820, 822 (Tex.1983).

■ We hold there is in this record no more than a scintilla of evidence of probative value to support the findings in this case. For this reason, we reverse the judgments of the courts below and render judgment that Wesley Richardson's parental rights be reinstated.