NO. 07-04-0061-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 8, 2005



______________________________




AMERICAN PROTECTION INSURANCE COMPANY, APPELLANT



v.



PATRICIA A. JOHNSON, APPELLEE




_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-514,001; HON. BLAIR CHERRY, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (1)

OPINION


 In this appeal, appellant American Protection Insurance Company (American),
challenges a judgment awarding workers' compensation benefits to appellee Patricia A.
Johnson (Johnson). In doing so, it presents two issues for our determination. In those
issues, American asks us to determine whether: 1) the testimony of Johnson's expert
witness, Dr. Thomas Kurt (Kurt), was unreliable and should have been excluded by the trial
court, and 2) the trial court erred in admitting hearsay testimony from Johnson regarding
carbon monoxide poisoning testing on October 30, 1998. Finding no reversible error in the
trial court's rulings, we affirm the judgment of the trial court.

Background

 In the underlying case, Johnson contends she was exposed to carbon monoxide
while in the course and scope of her employment with the Highland Medical Center which
was a producing cause of her cardiomyopathy. At the time of her alleged injury from
exposure to carbon monoxide, American was the Highland Medical Center's workers'
compensation insurance carrier. American did not dispute that Johnson was injured as a
result of work-related exposure to carbon monoxide, but it denied that the exposure caused
her cardiomyopathy. 

 At a hearing before a Texas Workers' Compensation Commission (TWCC) hearing
officer, the officer found that although Johnson had suffered a compensable injury on
October 30, 1998, it was not a producing cause of her cardiomyopathy. Upon appeal to
a TWCC appeals panel, this decision was upheld. Johnson then filed the suit underlying
this appeal seeking judicial review. See Tex. Lab. Code Ann. § 410.251 (Vernon 1996).

 Prior to and during the trial on the merits, American sought to exclude the testimony
of Johnson's expert witness on the basis that the data upon which Kurt relied in forming his
opinion on the cause of Johnson's cardiomyopathy was not reliable. American also
unsuccessfully sought to exclude the testimony about the results of an October 30, 1998
air measurement test run at Johnson's workplace showing the presence of carbon
monoxide. Kurt relied upon the results of this test in giving his expert testimony about the
cause of Johnson's cardiomyopathy.

Discussion

 Because of its bearing upon the challenge to Kurt's testimony, we will first discuss
American's second issue. In that issue, American contends that Johnson's testimony about
the results of the carbon monoxide test at her workplace constituted inadmissible hearsay
because it was performed by a local gas company. In considering this challenge, we must
keep in mind that evidentiary rulings admitting or excluding evidence are committed to the
trial court's sound discretion. See Texas Dep't of Transp. v. Able, 35 S.W.3d 608, 617
(Tex. 2000); City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). The error
of a trial judge in admitting or excluding evidence will not be cause for reversal unless an
appellant shows both that the ruling was in error and that it probably caused the rendition
of an improper judgment. See Tex. R. App. P. 44.1; Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998); City of Brownsville v. Alvarado, 897 S.W.2d at
753. Further, error in the admission of evidence will be deemed harmless if the objecting
party introduces the same or similar evidence, Southwestern Elec. Power Co. v. Burlington
N. R.R. Co., 966 S.W.2d 467, 473 (Tex. 1998), or permits the admission of the same or
similar evidence without objection. Richardson v. Green, 677 S.W.2d 497, 501 (Tex. 1984).

 Assuming, without deciding, that the trial court did err in admitting Johnson's
testimony about the test, our review of the record reveals that this testimony was
cumulative of other evidence admitted without objection. American's specific objection was
to Johnson's identification of the exact reading from the carbon monoxide testing and to
both Johnson's and Kurt's testimony about this specific reading. However, the record
shows that Johnson introduced, without objection, two medical evaluation reports prepared
by Kurt in which it was specified that the carbon monoxide reading on October 30, 1998,
was 316 parts per million of carbon monoxide. Additionally, American did not request
redaction of those specific references. Moreover, American's expert, Dr. Eric Comstock
(Comstock), states in his report that it was reasonable to assume that Johnson was
exposed to approximately 300 parts per million of carbon monoxide in her workplace. In
view of this evidence, the admission of Johnson's testimony regarding the carbon monoxide
reading, even if erroneous, probably did not cause the rendition of an improper judgment
and was therefore harmless. American's second issue is overruled. 

 Returning to American's first issue, American argues Kurt's expert testimony was
unreliable and should have been excluded by the trial court because it was based upon
unreliable methodology or factual foundation. Specifically, it points out that Kurt's opinion
that Johnson was chronically exposed to carbon monoxide is not reasonable and lacks a
proper factual foundation because it was based upon a single reading. Further, American
argues that Kurt's methodology is not reliable because there is no scientifically accepted
theory that chronic exposure to carbon monoxide causes cardiomyopathy. In evaluating
these arguments, we will first look to the factual assumptions made by Kurt in forming his
opinion and then to the scientific reliability of his conclusion.

 A trial court's determination of the reliability of expert evidence is part of its
determination of admissibility and is not erroneous absent an abuse of discretion. See
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998). The test for
determining whether the trial court abused its discretion is whether it acted without
reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). When erroneously admitted evidence is merely
cumulative or does not concern a material issue dispositive of the case, the error is
harmless. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 230 (Tex. 1990); Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). Harmfulness is determined by
looking at the entire record to see whether the judgment was controlled by the testimony
that should have been excluded. Mancorp, Inc. v. Culpepper, 802 S.W.2d at 230; Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d at 396. 

 Reiterated, the thrust of American's challenge to Kurt's testimony is its argument 
that chronic exposure to carbon monoxide cannot be extrapolated from one reading and
his reliance upon that one reading makes his testimony unreliable. However, the record
reveals that Comstock, American's expert, specifically indicated that it is reasonable to
assume chronic exposure based on the one reading, and further, Kurt's assumption that
Johnson's carbon monoxide blood saturation was 30 percent could also be considered
reasonable. In Comstock's report, tendered by American, there appears the following
paragraph:

 Based upon the air monitoring of the patient's working environment in
October of 1998[,] it is reasonable to assume that she had been exposed to
carbon monoxide concentrations in the order of 300 ppm throughout the work
day for a period which has not been determined but appears to have been
a minimum of several months. Such a concentration of carbon monoxide in
the ambient air would result in significant hemogoblin saturation and I would
concur with the estimate of approximately 30% carboxyhemoglobin to be
expected.


Consequently, all of the expert testimony before the trial court supported the conclusion
that Johnson was chronically exposed to carbon monoxide and that her blood saturation
level was approximately 30 percent.

 American also challenges Kurt's opinion that Johnson's work-related exposure to
carbon monoxide caused her to develop cardiomyopathy. We note that Comstock opined
that even chronic exposure to carbon monoxide does not cause any clinical illnesses. 
However, that causation opinion is merely cumulative of other causation evidence in the
record. For example, although he indicates that Kurt's theory regarding chronic exposure
has not been accepted in the scientific community in the United States, he acknowledges
that the British scientific community believes that "chronic exposure to carbon monoxide
increases the incidence of heart problems . . . ."

 Moreover, because workers' compensation was involved, Johnson was sent to a
TWCC-designated doctor, Dr. Randall Wolcott. He opined in two separate reports that,
within a reasonable degree of medical probability, Johnson's work-related exposure to
carbon monoxide was a producing cause of her "heart disease." Indeed, in one of these
reports, which was introduced by American without any request to redact or exclude the
causation opinion, Wolcott stated:

 She [Johnson] has been seen by Dr. Rizzo who has diagnosed her with
cardiomyopathy. It is clear that carbon monoxide does cause significant
cellular destruction to myocardial cells. There is reasonable medical
probability that the carbon monoxide did contribute to the patient's heart
disease. 


 Thus, even assuming arguendo that the trial court was in error in admitting Kurt's
expert testimony, under this record, we cannot conclude that its admission probably caused
the rendition of an improper judgment. See Mancorp, Inc. v. Culpepper, 802 S.W.2d at
230. American's first issue is overruled.

 In summary, both of American's issues are overruled and the judgment of the trial
court is affirmed.


 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-2005).