IN THE INTEREST OF A.D.M., A.D.M., C.M.M, AND A.J.M., CHILDREN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-007-CV

IN THE INTEREST OF 

A.D.M., A.D.M., C.M.M., 

and A.J.M., CHILDREN 

------------

FROM THE 89
th
 DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

After a jury trial, the trial court ordered that the parental rights of D.M. (“Father”) and A.J. (“Mother”) to the children A.D.M., A.D.M.,
(footnote: 2) C.M.M., and A.J.M. be terminated, based on the jury’s findings that the parent-child relationship should be terminated.  Father appeals from the decree of termination.  The decree contains the trial court’s findings by clear and convincing evidence that termination is in the children’s best interest and that Father:

knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; and/or

has engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and/or

has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children; and/or

has used a controlled substance in a manner that endangered the health and safety of the children and failed to complete a court-ordered substance abuse treatment program; and/or

has failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition.

Father does not challenge any of the above bulleted findings.  He challenges only the factual sufficiency of the evidence supporting the best interest finding.  Because we hold that the evidence is factually sufficient to support the finding that termination of Father’s parental rights is in the children’s best interest, we affirm the trial court’s decree of termination.

In addition to the evidence supporting the unchallenged findings regarding child endangerment, Father’s illegal drug use, his failure to support his children, his failure to comply with the court-ordered safety plan, and his failure to complete court-ordered substance abuse treatment, the jury also heard testimony that Father took no steps to claim his children legally until the petition for termination had been filed, had never supported his children by working, had been in and out of jail at least three times while the case was pending, did not have stable housing, did not have proof of income, and did not have a close bond with the younger two children, C.M.M. and A.J.M.  Additionally, regarding court-ordered services, the evidence showed that Father did not attend individual counseling, attended only one parenting class, completed a drug assessment by telephone, completed a psychological evaluation while he was in jail, refused to use a bus ticket to Abilene for inpatient drug treatment, continued to use illegal drugs, and had only irregular visits with the children.

The evidence also showed that Father had an unrealistic view of life, had borderline intelligence, and would find parenting challenging, especially when dealing with special needs, behavior problems, anticipating future needs, and planning.  There was evidence that he never inquired about the children’s school, health, or well-being while they were in substitute care. 
 There was no evidence about how Father intended to support his children, house them, or keep them safe, other than the fact that he had told a witness that he planned to move to Fort Worth, get his life together, and get his children back.  There was evidence that he often said he was going to get his life together, but no evidence that he ever took steps to do so.

Additionally, because Father failed to answer requests for admission, he was deemed to have admitted that the children had been in stable, safe environments since they entered into substitute care and that a permanent placement would be in their best interests.  Finally, the jury members could see for themselves that Father did not attend the trial.

On the other hand, there was evidence that the parents had placed their third child with Father’s brother, Ralph, months before CPS intervened, that she was adored in his blended home, which included his longtime significant other and her children, that the child was “the baby of the family,” that a home study had been conducted with positive results, that Ralph wanted to adopt her, and that CPS approved that plan.

The evidence also showed that the other three children were placed in the home of a couple suggested by the parents.  The children and foster parents had bonded, the children were flourishing in the home, the couple wanted to adopt the children, the oldest child had expressed the desire to be adopted by the couple, and CPS approved that goal.  The evidence also showed that the two foster families, independently of CPS and the birth parents, decided to maintain the relationship among the four children through regular visits.  There was testimony that these placements provided the children with stability, structure, predictability, and love.  Additionally, there was testimony that the alternative of awarding the State permanent managing conservatorship without terminating the parent’s rights would not be in the children’s best interest because foster parents could change, the children could be further split up, the children would not have a permanent parent to rely on, and they would not be able to move forward in life with any certainty.

Based on the appropriate standard of review,
(footnote: 3) and considering the 
Holley
 factors,
(footnote: 4) we hold that the evidence is factually sufficient to support the trial court’s finding that the termination of Father’s parental rights is in the best interest of the children.  We overrule Father’s sole issue and affirm the trial court’s termination decree.

PER CURIAM

PANEL F: DAUPHINOT, WALKER, AND MCCOY, JJ.

DELIVERED: August 12, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The two elder children have the same initials.

3:
See Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002)
; Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984)
; 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).

4:
See Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).