**Opinion filed June 18, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00226-CV

_____

## IN THE INTEREST OF A.L.K., A CHILD

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 45,457**

### MEMORANDUM OPINION

This is an accelerated appeal from the trial court's termination of parental rights. We affirm.

*Background Facts*

Appellant, Melanie Margaret DeLoach, is A.L.K.'s mother. Lee Roy Clay Kitchell is A.L.K.'s father. A.L.K. was born on August 31, 2002. A.L.K. lived with appellant for about the first eighteen months of his life. On March 25, 2004, the Texas Department of Family and Protective Services removed A.L.K., his half sister M.A.C., and his half brother J.A.K. from appellant's care. On the next day, the Department filed an "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" in San Saba County, Texas. In the final order in that cause, the trial court appointed Kitchell as A.L.K.'s permanent managing conservator and appointed appellant as A.L.K.'s possessory conservator. The

order provided that appellant's possession of and access to A.L.K. were to occur at times mutually agreed to by the parties and, in the absence of such an agreement, at the sole discretion of Kitchell.

After the Department received allegations that Kitchell had sexually abused A.L.K., it removed A.L.K. from Kitchell's care. On June 26, 2007, the Department filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" in this cause. At that time, appellant was in the Travis County Jail. In its petition, the Department alleged that, if reunification of A.L.K. with appellant could not be achieved, the trial court should terminate the parent-child relationship between appellant and A.L.K. The Department requested the trial court to terminate the parent-child relationship between Kitchell and A.L.K. Kitchell signed an affidavit in which he voluntarily relinquished his parental rights to A.L.K. Later, the Department filed a notice of its intent to pursue termination of appellant's parental rights.

Following the filing of this cause, the trial court appointed the Department as A.L.K.'s temporary managing conservator and approved placement of A.L.K. with Charlotte Spence. M.A.C. and J.A.K. also lived with Charlotte Spence and her husband, Aubrey Spence. The Spences are J.A.K.'s biological grandparents.

After a bench trial, the trial court entered an order terminating appellant's parental rights to A.L.K. Under TEX. FAM. CODE ANN. § 161.001(Vernon 2008), the trial court found by clear and convincing evidence that appellant:

> [1] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child [as stated in Section 161.001(1)(E)];

> [2] had her parent-child relationship terminated with respect to another child based on a finding that [her] conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or substantially equivalent provisions of the law of another state [as stated in Section 161.001(1)(M)];

> [3] failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child [as stated in Section 161.001(1)(O)].

The trial court also found by clear and convincing evidence that termination of appellant's parental rights was in A.L.K.'s best interest. *See* Section 161.001(2).

The trial court's order also terminated Kitchell's parental rights to A.L.K. Kitchell has not appealed the termination of his parental rights and is, therefore, not a party to this appeal. In its order, the trial court appointed the Department as A.L.K.'s permanent managing conservator.

*Issues on Appeal*

Appellant presents nine issues for review. In her first issue, she contends that the trial court abused its discretion in denying her request for a 180-day extension of the dismissal date of this cause under Section 263.401 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.401 (Vernon 2008). In her second through ninth issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's Section 161.001(1)(E), (M), and (O) and best-interest findings.

*Sufficiency of the Evidence Standards of Review*

Texas courts have long recognized that the natural right existing between a parent and a child is of "constitutional dimensions." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). There is a strong presumption that the best interest of a child is served by keeping the child with the natural parent. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Thus, involuntary termination statutes are strictly scrutinized in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985).

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S.745, 769 (1982)); *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.P.H.*, 196 S.W.3d at 292. Even though it is a fine one, there is a distinction between legal and factual sufficiency when the burden is by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d at 266.

When the burden of proof is by clear and convincing evidence and a reviewing court examines the evidence for legal sufficiency, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *Id.* We must assume that the factfinder resolved disputed facts

in favor of its finding, if a reasonable factfinder could do so. Further, we should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* But, we are not to disregard all evidence that does not support the finding. For instance, to disregard undisputed facts that do not support the finding could lead to a flawed analysis of the existence, or not, of clear and convincing evidence. *Id.* Further, when we view evidence in the light most favorable to the verdict, it cannot be viewed in "isolated bits and pieces divorced from its surroundings; it must be viewed in its proper context with other evidence." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). After a review under these standards, if we determine that no reasonable factfinder could form a firm belief or conviction in the truth of the matter to be proven, then we must hold that the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

When a court of appeals undertakes a factual sufficiency review, it must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 263. We must also determine if the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations about which proof is sought. *Id.* at 266. We must also ask: Is the disputed evidence such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling? *Id.* The evidence is factually insufficient if, on the record as a whole, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the thing sought to be proved. *Id.*

To terminate parental rights, the proponent must prove by clear and convincing evidence that a parent committed one or more of the acts or omissions set forth in Section 161.001(1) and that termination of parental rights is in the child's best interest. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re B.L.D.*, 113 S.W.3d 340, 353-54 (Tex. 2003); *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex. 1984). On appeal, appellant asserts that the evidence was legally and factually insufficient to support each of the three grounds – Section 161.001(1)(E), (M), and (O) – that the trial court found to support the termination.

The Department presented four witnesses at trial: (1) appellant; (2) Amy Hernandez, a caseworker for the Department; (3) Charlotte Spence; and (4) Isaac Miramontes, the court-appointed special advocate and guardian ad litem assigned to A.L.K. After the Department rested, appellant's counsel recalled appellant to the stand. We have reviewed all the evidence in the record, and we will summarize the evidence below.

A.L.K. was five years old at the time of trial. Appellant testified that A.L.K. lived with her until he was about eighteen months old. She said that the Department removed him from her care as part of a neglectful supervision case. The Department placed A.L.K. in Kitchell's care in Big Spring. Appellant testified that, while A.L.K. was in Kitchell's care, she talked with A.L.K. on the phone "quite regularly" and visited him twice in Big Spring. The Department removed A.L.K. from Kitchell's care on June 25, 2007, and filed this cause in Big Spring the next day. At that time, appellant was in the Travis County Jail. After the Department removed A.L.K. from Kitchell's care, A.L.K. spent some time in foster care and then was placed in the care of Charlotte and Aubrey Spence. Two of appellant's other children, M.A.C. and J.A.K., also lived with the Spences.

Appellant was released from the Travis County Jail on July 8, 2007. Upon her release, appellant lived in Llano. She also said that she maintained employment after her release from jail. On August 15, 2007, appellant signed a family service plan. The plan required appellant to perform a number of tasks and services, including completing a psychological evaluation, completing a drug and alcohol assessment, attending and successfully completing individual counseling, attending and successfully completing parenting classes, submitting to random drug screenings, maintaining stable housing and employment, providing the Department with current locating information about herself, and demonstrating her willingness to protect A.L.K. from future abuse or neglect. The family service plan indicated that a courtesy worker would be assigned to appellant, and the family service plan required appellant to contact her courtesy worker to set up some of the services.

Erica Partlow-Melton was the initial caseworker for the Department in this case. The evidence showed that Melton did not assign a courtesy worker to appellant. Appellant testified that she could not complete the family service plan because the Department did not assign her a courtesy worker in the Llano area. Hernandez testified that this case had been assigned to her on

November 1, 2007. Hernandez said that Melton had not set up a courtesy worker for appellant and that the failure to provide a courtesy worker to appellant was her "mistake as well." However, Hernandez testified that she attempted to locate appellant in November 2007 for the purpose of providing her with a courtesy worker. Hernandez said that she attempted to contact appellant by calling the phone numbers and by sending letters to the addresses that the Department had listed for appellant in its computers. Hernandez also testified that she received no response from appellant. Hernandez acknowledged that appellant could not complete some of the services in the plan without having a courtesy worker.

Appellant testified that she attended AA/NA sessions in Llano. She said that she attended church and that she obtained counseling from a priest. However, appellant was arrested in San Saba County in December 2007 for possession of a dangerous drug. Appellant signed a statement in connection with the arrest. In the statement, appellant said that she had traveled to Waco with a man named "Mike"; that Mike had purchased 700 pills from another man in Waco; that, after the purchase, she and Mike had driven to San Saba; that a police officer had stopped them; and that the officer had found the pills in the car. Appellant also testified that she was placed on misdemeanor probation in Gillespie County for burglary of a coin-operated machine. At the time, appellant was already on probation for a state jail felony offense of possession of a controlled substance. Appellant said that the misdemeanor burglary offense caused her felony probation to be revoked and that, therefore, she went back to jail. She said that she was in the Travis County Jail from December 21, 2007, until January 22, 2008, when she was sent to the Plane State Jail. On February 15, 2007, Hernandez learned from Charlotte Spence that appellant was in the Plane State Jail. Hernandez said that she sent a letter to appellant at the jail asking appellant to contact her.

Appellant testified that she enrolled in the Changes class, a women's health class, and a parenting class at the Plane State Jail. She said that she completed the women's health class but was unable to complete the Changes class and the parenting class because she was transferred to the Woodman State Jail.

Appellant remained incarcerated at the time of trial. She said that she had not seen A.L.K. since he was removed from Kitchell's care. Appellant thought that she would be released from prison on July 1, 2008. However, she acknowledged that her misdemeanor probation in Gillespie

6

County might serve as a "hold" on her release and that she faced a possible felony charge in San Saba County in connection with her December 2007 arrest for possession of a dangerous drug. When asked further about her criminal history, appellant said that she had "some theft by checks and the criminal trespassing and a DWI."

Appellant testified that she was married to Darrell Hatfield. Appellant said that Hatfield had a significant criminal history. Hatfield was in jail at the time of trial. Appellant said that Hatfield would be released from jail on June 12, 2008, and that she planned to reunite with him upon her release from prison. She said that A.L.K. did not know Hatfield.

Appellant and Hatfield had a child, J.R.H., together. J.R.H. was born on January 1, 2007. Appellant's and Hatfield's parental rights to J.R.H. had been terminated. During her testimony, appellant admitted that she used cocaine and smoked marihuana the night before J.R.H. was born. Appellant said that J.R.H. was removed from her care because "[t]here was cocaine and marihuana found in my system and her system." Appellant acknowledged that her parental rights to J.R.H. had been terminated, and the trial court admitted into evidence a copy of the April 19, 2007 order terminating the parent-child relationship between appellant and J.R.H. In that order, the trial court found by clear and convincing evidence that appellant had violated Section 161.001(1)(D) and (E) of the Family Code.

Appellant testified that, upon her release from prison, she wanted to have supervised visits or weekend visits with A.L.K. Ultimately, she desired for A.L.K., M.A.C., and J.A.K. to live with her full time. She said that she wanted the children to remain together. Appellant testified that the Spences did an "excellent job" taking care of the children.

Hernandez testified that the Department's original goal in this case was for Charlotte Spence to be appointed as A.L.K.'s permanent managing conservator. She said that the goal changed to termination of appellant's parental rights and adoption of A.L.K. after the Department learned of appellant's December 2007 arrest.

Hernandez testified that A.L.K. was placed with Charlotte Spence on August 1, 2007. Hernandez said that A.L.K. was current on his medical examinations, that he participated in weekly play therapy, that his placement with the Spences was sufficient to provide for his needs at the present time, and that the Department's goal for A.L.K. was adoption by the Spences. Hernandez

7

believed that it was in A.L.K.'s best interest to terminate appellant's parental rights. Hernandez testified that adoption by the Spences would allow A.L.K. to maintain contact with his siblings. She said that A.L.K. had "grown up with" the Spences and his siblings and that he had "bonded well" with them. Hernandez testified that appellant's continuing criminal activity concerned the Department. Hernandez said that she had no reason to believe that appellant could provide counseling or medical care for A.L.K.

Charlotte Spence testified that she was married to Aubrey Spence. She said that A.L.K. had lived with them since July 31, 2007. She said that A.L.K. also lived with them from March 2004 until late October 2004. M.A.C. and J.A.K. also lived with the Spences. Charlotte Spence testified that she and her husband provided for all of A.L.K.'s needs, that they intended to provide a permanent placement for him, that they wanted to adopt him, and that they could provide long-term care for him. She said that A.L.K. was doing very well and that, on a regular basis, he said, "I like it here." Charlotte Spence testified that she and her husband did not want A.L.K., M.A.C., and J.A.K. to be separated from each other.

Miramontes testified that it would be in A.L.K.'s best interest for the trial court to terminate appellant's and Kitchell's parental rights. Miramontes said that the first factor he took into consideration was A.L.K.'s age and his need for a safe and stable environment. He said that the Spences had provided A.L.K. with such an environment. He also said that the Spences appeared to be meeting all of A.L.K.'s needs. Miramontes also testified that A.L.K. was thriving in his placement with the Spences. He said that it was in A.L.K.'s best interest to reach some form of permanency, which could be received through termination of appellant's and Kitchell's parental rights followed by adoption. Miramontes said that it did not appear that appellant could provide permanency for A.L.K. and that he was very concerned about her incarceration and additional outstanding charges. Miramontes also said that appellant did not have the ability to provide a safe home environment for A.L.K. or to provide for his needs. Miramontes did not know whether appellant would be capable of taking care of A.L.K. in six months. He testified that A.L.K. deserved to have permanency as quickly as possible.

*Trial Court's Finding Under Section 161.001(1)(M)*

In her fourth and fifth issues, appellant challenges the legal and factual sufficiency of the evidence to support the trial court's Section 161.001(1)(M) finding. Section 161.001(1)(M) provides

8

that a court may order termination of the parent-child relationship if the parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." Section 161.001(1)(D) provides a ground for termination when the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Section 161.001(1)(E) provides a ground for termination when the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."

Section 263.405 of the Family Code governs appeals of final orders involving children under the Department's care. TEX. FAM. CODE ANN. § 263.405 (Vernon 2008). The statute requires that a statement of points on which a party intends to appeal be filed with the trial court not later than the fifteenth day after the trial court signs the final order. Section 263.405(b). The statement of points may be combined with a motion for new trial. Section 263.405(b-1). The statute provides that "[t]he appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial." Section 263.405(i).

Appellant timely filed a motion for new trial and a statement of points on which she intended to appeal. She challenged the legal and factual sufficiency of the evidence to support the trial court's findings under Section 161.001(1)(E) and (O) in the motion for new trial and in the statement of points. However, she did not challenge the trial court's finding under Section 161.001(1)(M) in either document. The statute is clear that a party who does not raise an issue in a statement of points does not preserve that issue for appeal. Therefore, we cannot consider appellant's fourth and fifth issues.

We note that the evidence set forth above showed that appellant had her parent-child relationship terminated with respect to J.R.H. based on a finding that she had engaged in conduct that violated Section 161.001(D) and (E). Therefore, assuming that appellant preserved the issue for review, the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(M).

The trial court's finding under Section 161.001(1)(M) is sufficient to support a termination order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section

161.001(1) is necessary to support a judgment of termination."). As such, we need not address appellant's second, third, sixth, and seventh issues challenging the trial court's findings under Section 161.001(1)(E) and (O).

*Trial Court's Best Interest Finding*

Appellant argues in her eighth and ninth issues that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in A.L.K.'s best interest. In deciding whether the evidence is sufficient to support a trial court's finding that termination is in the child's best interest, we are guided by the nonexclusive list of factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371-72. The list is not an exhaustive one. *Id.* The focus is on the child's best interest, not that of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

The evidence demonstrated that A.L.K. had been in the Spences' home since July 31, 2007. The Spences had provided a safe and stable environment to A.L.K., and A.L.K. was thriving in that environment. The Spences had met A.L.K.'s needs. Appellant testified that the Spences did an excellent job taking care of the children. Miramontes testified that it was in A.L.K.'s best interest to reach some form of permanency and that he deserved to have permanency as quickly as possible. The Spences wanted to adopt A.L.K. and, therefore, to provide him with that permanency.

Appellant had not exhibited adequate parenting abilities in the past. A.L.K. was removed from her care when he was eighteen months old. Appellant has a lengthy criminal history and a history of drug use. She smoked marihuana and used cocaine the night before J.R.H. was born, and her parental rights to J.R.H. were terminated. Appellant was in jail when the Department filed this cause. She was released from jail about two weeks later. Appellant agreed in the family service plan that she would maintain stable housing and employment. However, she failed to do so. Instead, she continued to engage in criminal activities, and her felony probation was revoked. Appellant went

10

to jail on December 21, 2007, and she remained incarcerated at the time of trial. The evidence demonstrated that appellant could not provide A.L.K. a safe and stable home environment or meet his physical and emotional needs. Further, there was no evidence that appellant would be able to sustain a safe and stable environment or to meet A.L.K.'s needs in the future. Based on appellant's past conduct, the trial court could have reasonably concluded that appellant would not be able to provide A.L.K. a safe and stable environment or to meet his needs in the future.

The evidence is both legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship between appellant and A.L.K. was in A.L.K.'s best interest. We overrule appellant's eighth and ninth issues.

*Appellant's Request for an Extension*

On June 26, 2007, the trial court entered a temporary order naming the Department as the temporary sole managing conservator of A.L.K. Section 263.401(a) and (b) of the Family Code provides as follows:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

> (b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).

The trial court determined that the dismissal date for this cause was June 30, 2008.

In her brief, appellant states that her counsel orally requested an extension under Section 263.401(b) about two weeks before the final trial. However, appellant also states that "[t]he hearing during which this initial motion was made was not included in the Reporter's Record." A docket entry made by the trial court on May 21, 2008, indicates that appellant's counsel made a motion to extend the dismissal date and that the trial court denied the motion.

11

The trial court held the bench trial in this cause on June 4, 2008. After the trial court requested announcements for the record, the following exchange took place between appellant's counsel and the trial court:

[APPELLANT'S COUNSEL]: [B]efore I announce ready I would like to renew my motion that I made two weeks ago and my request for an extension. I don't know if your Honor would like for me to restate my reasons from before. I am sure the Court remembers, but basically requesting [appellant] be given a chance to complete services, get an extension. She is set to be released from her current incarceration on July 1st, and therefore I would like to renew my objection – not my objection – my motion for an extension which I made two weeks ago.

THE COURT: The motion is in all respects denied.

[APPELLANT'S COUNSEL]: In with that point then, I announce ready.

After the evidence was concluded, appellant's counsel again renewed his request for an extension:

[APPELLANT'S COUNSEL]: Your Honor, prior to, I guess, resting and closing, I would like to renew my original motion and request an extension once again. I believe that there's been significant evidence to show that [appellant] has put forth the effort, that she made the attempt, and I would renew my motion to request that there be an extension and that she be given every opportunity in order to finish and show that she can complete all services and that she basically should not have her rights terminated.

THE COURT: The motion is in all respects denied.

We review a trial court's ruling on a motion for extension under an abuse of discretion standard. *See In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied). To obtain an extension under Section 263.401(b), appellant had the burden of demonstrating that "extraordinary circumstances necessitate[d] the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator [was] in the best interest of the child." The trial court's docket sheet shows that, on May 21, 2008, appellant's counsel made a motion to extend the dismissal date. However, as acknowledged by appellant in her brief, the record does not contain a reporter's record of the hearing on the motion. Therefore, the record does not show that appellant tendered any evidence in support of her request for an extension. In the absence of a reporter's record of the hearing, we are unable to determine whether appellant met her burden for obtaining an extension.

12

Under this circumstance, we cannot conclude that the trial court abused its discretion in denying appellant's motion for extension.

On the trial date, appellant's counsel renewed the motion for extension when the trial court requested announcements for the record. At that time, appellant offered no evidence in support of the motion. Instead, her counsel stated the grounds that he believed justified an extension. Because appellant tendered no evidence in support of her motion for an extension, she cannot demonstrate that the trial court abused its discretion in denying it. *In re D.W.*, 249 S.W.3d at 648. Appellant's counsel again renewed the motion for extension at the conclusion of the evidence. Viewing all the evidence presented at trial, we cannot say that the trial court abused its discretion in denying appellant's motion. The evidence, which is summarized above, did not demonstrate that "extraordinary circumstances" justified an extension or that continuing the Department's appointment as A.L.K.'s temporary managing conservator was in his best interest. We overrule appellant's first issue.

### This Court's Ruling

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


June 18, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.