**Opinion issued December 13, 2012.**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

## No. 01-12-00434-CV

———————————

## IN THE INTEREST OF T.L.S. and E.A.S.

———————————

**On Appeal from the 313th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-03971J**

———————————

## MEMORANDUM OPINION

In this accelerated appeal,[1] appellant, J.E.S., challenges the trial court's order, entered after a bench trial, terminating her parental rights to her two minor children. In three issues, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that she engaged in conduct or knowingly placed the children with persons who engaged in conduct

---

[1] *See* TEX. FAM. CODE ANN. § 263.405(a) (West Supp. 2012).

which endangered the physical or emotional well-being of the children,[2] she left the children alone or in the possession of another without providing adequate support for the children and remained away for a period of at least six months,[3] and termination of her parental rights was in the best interest of the children.[4]

We affirm.

## Background

On June 9, 2011, the Texas Department of Family and Protective Services ("DFPS") filed a petition to terminate appellant's parental rights to her children. DFPS attached to its petition the affidavit[5] of Edwin Turcios, a DFPS investigator assigned to appellant and her children. Turcios testified that on October 27, 2010, DFPS received a referral alleging neglectful supervision by appellant and her husband of their two children. In the referral, it was alleged that the parents did not "provide adequate care for the children," both parents had used "drugs/marijuana," and, because the children had been left with "an elderly relative

---

[2]     *See id.* § 161.001(1)(E) (West Supp. 2012).

[3]     *See id.* § 161.001(1)(C).

[4]     *See id.* § 161.001(2).

[5]     At the beginning of trial, DFPS asked the trial court to "take judicial notice of the contents of your file," specifically noting that it included "an order of paternity which includes [appellant's husband] as father of the children." On appeal, DFPS includes the affidavit as part of the evidence at trial, noting that this Court has considered such affidavits, when judicially noticed without objection, as part of the evidence supporting the trial court's findings. *See In re V.V.*, 349 S.W.3d 548, 556 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc).

2

who could not watch the children," the children "ended up wandering a few blocks away from the house."

In his affidavit, Turcios further testified that on October 29, 2010, Child Protective Services ("CPS") caseworker Shanna Rogers visited appellant's home and spoke to Sue Smith, appellant's grandmother and the woman who had allegedly been watching the children. Smith said that she would watch the children "when she needs to" and she had a brain tumor that did not "affect[] her ability to function." She said that she allowed the children to play in the backyard unsupervised "for about 15 minutes" and they "get out sometimes," but she later said that the children "always have someone watch them when they are outside." Rogers later spoke with Adult Protective Services ("APS") caseworker Philip Weaver, who said that although Smith "does have mental age related memory loss," she "is physically able to care for the children for a couple of hours at a time."

Rogers also spoke to appellant's neighbors, who said that appellant "has parties until late at night when [Smith] is out of the house" and "hides drugs in the flower pots at the house." Rogers then spoke with Brenda Sowder, the mother of appellant's half-brother. Sowder described appellant's house as "a total mess" and

3

"chaotic." She stated that appellant and her husband[6] took "Xanax bars" and "never have any food to eat for the children." At one point, Sowders's son told her that "someone that looked like he was in a gang busted into their house in the middle of the night who beat up this guy that [appellant] was having sex with." She further said that appellant and her husband would "drain [Smith] for all her money and . . . steal her money" and the children are "always stuck at home" with Smith. She said that Smith was "scared" of appellant so Smith would not attempt to leave the situation.

On January 10, 2011, Weaver reported that appellant had left Smith at the house and taken the children with her. The next day, DFPS received information that the children were being cared for by Cinnamon Phillips, appellant's mother. On February 1, 2011, Turcios visited Phillips's home, and Phillips stated that appellant had left the children at her home and Phillips did not know of appellant's whereabouts. She further stated that appellant "did not provide birth certificates, shot records or social security cards for the children." Turcios noted that appellant's children "appeared to be well cared for with no obvious signs of abuse or neglect." One of the children told Turcios that Phillips "always has a lot of food and he is happy at home with her." On May 19, 2011, Phillips informed Turcios

---

[6] At trial, appellant's husband submitted an affidavit voluntarily relinquishing his parental rights to the children. *See* TEX. FAM. CODE ANN. § 161.001(K).

4

that appellant was incarcerated, was "about to be released" and, upon her release, would reside with Phillips and the children.

At trial, DFPS caseworker Jhillian Tillis testified that the children came into the care of DFPS "due to allegations of neglectful supervision." Appellant was allegedly leaving the children "with an elderly caregiver," and both parents were using . . . drugs and marijuana." At the beginning of the case, both parents were residing in a homeless shelter, and DFPS found the children living with Phillips in January 2011. Tillis stated that appellant was still incarcerated on March 27, 2012, the day of trial, for the offense of forgery, and appellant was scheduled to be released in November 2012. She opined that appellant had not seen the children since July 2011, when she was initially incarcerated. Since appellant's incarceration, she had not contacted Tillis to request visits with the children. Appellant also had not provided "any money or any kind of support" or maintained "any significant contact with the children." However, Tillis did testify that appellant had sent her letters "asking how [the children] are doing." Tillis stated that appellant had nevertheless demonstrated a pattern where she "drops her kids on relatives and takes off."

On cross-examination, Tillis admitted that she had no "personal knowledge" as to whether appellant used narcotics or of the state of the home when the children were in the care of Smith. Instead, Tillis explained that she had heard of these

allegations "through the referral." She noted that appellant lived with Smith during the time that Smith was caring for the children. And Tillis admitted that the letters written to her by appellant "demonstrate[d appellant's] concern about the children."

Phillips testified that she had taken care of both of appellant's children since January 2011, prior to which the children had not been left with her. Before the children were dropped off at her house, Phillips would occasionally visit the children, and she had "typical mother worries" about their living situation, such as the house not always being clean. She opined that it was in the best interest of the children to remain with her and she "need[ed] to put [herself] in some sort of situation where [she could] receive assistance from CPS." Appellant had sent Phillips one to two letters a week to inquire about the children's well-being, and appellant seemed "happy" that the children had been placed with Phillips. On cross-examination, Phillips testified that she did not "have a problem" with appellant visiting the children and the children wanted to see appellant. She further testified that she did not believe that appellant would endanger the children.

DFPS also introduced into evidence appellant's criminal record, which indicated that, between October and December 2010, she had been charged with two state jail felony offenses of forgery, one state jail felony offense of debit card abuse, and one state jail felony of theft of $1,500 or more but less than $20,000.

The record also reveals that appellant, on April 6, 2011, was convicted of the misdemeanor offenses of possession of a dangerous drug, driving while intoxicated, and theft of over $50 and under $500.

**Standard of Review**

A parent's right to "the companionship, care, custody, and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982) (internal citation omitted). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). Likewise, the Texas Supreme Court has also concluded that "[t]his natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings should be strictly scrutinized. *Id.*

Because termination "is complete, final, irrevocable, and divests for all time that natural right . . . , the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id.* (citing *Santosky*, 455 U.S. at 747, 102 S. Ct. at 1391; *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984)). Clear and convincing evidence is "the measure or

7

degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re E.N.C.*, No. 11-0713, 2012 WL 4840710, at \*4 (Tex. Oct. 12, 2012); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Because the standard of proof is "clear and convincing," the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–66.

In conducting a legal-sufficiency review in a parental-rights termination case, we must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *See In re E.N.C.*, 2012 WL 4840710, at \*5 (citing *In re J.F.C.*, 96 S.W.3d at 266). In viewing the evidence in the light most favorable to the finding, we "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," and we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d at 266).

In conducting a factual-sufficiency review in a parental-rights termination case, we must determine whether, considering the entire record, including both evidence supporting and contradicting the finding, a fact finder reasonably could

8

have formed a firm conviction or belief about the truth of the matter on which the State bore the burden of proof. *Id.*; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

## Abandonment

In her second issue, appellant argues that the evidence is legally and factually insufficient to support the trial court's finding that she left the children alone or in the possession of another without providing adequate support for the children and remained away for a period of at least six months. *See* TEX. FAM. CODE ANN. § 161.001(1)(C) (West Supp. 2012).

In proceedings to terminate the parent-child relationship brought under section 161.001, DFPS must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Both elements must be established, and termination may not be based

9

solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

The court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has left the child alone or in the possession of another without providing adequate support for the child and remained away for a period of at least six months. *See* TEX. FAM. CODE ANN. § 161.001(1)(C). This ground is commonly characterized as the "abandonment" of a child by a parent. *Jordan v. Dossey*, 325 S.W.3d 700, 726 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re T.B.D.*, 223 S.W.3d 515, 518 (Tex. App.—Amarillo 2006, no pet.). The six-month period must be a period of at least six consecutive months. *Jordan*, 325 S.W.3d at 727.

At trial, Tillis testified that appellant had "left" the children with Phillips and demonstrated a pattern where she "drops [the children] on relatives and takes off." Phillips testified that the children were left with her in January 2011, although she had never taken care of the children before. She first testified that it was "about four months" until the children saw appellant again, when Phillips "may have made a trip to Waco" to see appellant. However, Phillips then explained that

10

appellant did not actually come to see the children until July 2011.[7] From the time that appellant first left the children with Phillips, appellant did not provide Phillips with any "financial assistance" or "any support" for the children. Phillips further testified that she was in need of financial assistance at the time of trial, stating that she "need[ed] to put [herself] in some sort of situation where [she could] receive assistance from CPS." Appellant did write Phillips "[o]ne or two letters a week," asking "how the children are doing." However, her only contact with the children was "[o]ver the phone once, maybe" in March 2011. In addition, in his affidavit,[8] Turcios testified that appellant simply "dropped [the children] off" with Phillips in January without informing Phillips of her whereabouts. Appellant also did not provide Phillips with "birth certificates, shot records or social security cards for the children."

Appellant argues that by leaving the children with Phillips, who has demonstrated that she can care for the children, appellant has provided "adequate support" of the children under section 161.001(C), citing *Holick*, 685 S.W.2d at 18.

---

[7]     The record is unclear as to appellant's whereabouts from January to July 2011. In his affidavit, Turcios notes that, at the time the affidavit was sworn, June 9, 2011, appellant was "reportedly living in a temporary homeless shelter." Tillis testified that appellant had been incarcerated "since early July of 2011."

[8]     Although the panel expresses its concern with the practice of relying on judicially-noticed affidavits, not formally introduced into evidence at trial, as evidence supporting the trial court's findings in termination cases, we are nevertheless obligated to follow this court's precedent in relying on such affidavits when they are "judicially noticed without objection." *See In re V.V.*, 349 S.W.3d 548, 556 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

11

In *Holick*, the mother left her two children with another family, and the family later petitioned to terminate the mother's parental rights and adopt the children. *Id.* at 19. The Texas Supreme Court, in regard to section 161.001(C), held that a parent is merely required to "make arrangements for adequate support rather than personally support the child." *Id.* at 21. Noting that the family did not expect the mother to send financial support, the court held that by leaving the children with the family, the mother had made arrangements for adequate support, and her parental rights could not be terminated because of abandonment. *Id.*

Here, however, there is no evidence that when appellant left the children with Phillips, appellant had made any arrangements to provide any assistance or had reached an agreement with Phillips that no such assistance was needed. Rather, Phillips stated that appellant "dropped [the children] off" without informing Phillips of her whereabouts, and appellant failed to provide Phillips with "birth certificates, shot records or social security cards." At trial, Tillis testified that appellant simply "left [the children] with" Phillips and had "drop[ped] her kids on relatives and take[n] off." And Phillips testified that appellant had never provided her with any financial assistance, despite the fact that Phillips was in need of such assistance. Although appellant sent Phillips letters inquiring about the children's well-being and told Phillips that she was "happy" that the children were staying with Phillips, there is nothing in the record to indicate that appellant had an

12

agreement or an understanding with Phillips that she would take care of the children without any assistance or support. Thus, the trial court could have reasonably concluded that appellant had failed to provide adequate support or "make arrangements" to provide adequate support for the children during the months in question. *See Jordan*, 325 S.W.3d at 728 ("[U]nlike in *Holick*, there was no understanding between Akin and Jordan that Jordan would not be sending support because Akin could provide adequate support on his own.").

Appellant also argues that the evidence is insufficient to prove that she remained away for six months, relying on *In re T.B.D.*, 223 S.W.3d at 515. In *In re T.B.D.,* the father "attempted to make contact through correspondence" to his children during his incarceration. *Id.* at 519. The court noted that although a parent's imprisonment can be a factor in abandonment cases, it is not conclusive. *Id.* (citing *In re B.T.*, 954 S.W.2d 44, 49 (Tex. App.—San Antonio 1997, pet. denied)). It then held that the evidence was insufficient to support a conclusion that the father had abandoned the children. *Id.* Appellant notes that both Tillis and Phillips testified that appellant had written letters inquiring about the well-being of the children. However, there is no indication that the letters were addressed to the children, and both Tillis and Phillips testified that they did not share the letters with the children. Furthermore, there is no indication that appellant was incarcerated from January to July 2011, as was the father in *In re T.B.D.* On the contrary, in his

affidavit, Turcios testified that on June 9, 2011, appellant was "reportedly living in a temporary homeless shelter." And Tillis testified that appellant was not initially incarcerated until July 2011, which was the last time that appellant had seen the children. *See Jordan*, 325 S.W.3d at 728 ("Although an inmate's sole means to communicate with a young child is by letter, that type of communication is wholly inadequate when the person lives in the same city and is physically capable of maintaining personal contact with the child."). And although Phillips testified that she "may" have taken the children to Waco "about four months" after January 2011 and appellant "maybe" tried to contact the children by telephone in March, she also testified that appellant made no efforts to visit the children until July 2011.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the trial court could have reasonably formed a firm belief or conviction that appellant had left the children alone or in the possession of another without providing adequate support for the children and remained away for a period of at least six months. *See* TEX. FAM. CODE ANN. § 161.001(C). Furthermore, considering the entire record, we conclude that the trial court could have reasonably formed a firm belief or conviction that appellant had left the children alone or in the possession of another without providing adequate support for the children and remained away for a period of at least six months.

14

Accordingly, we hold that the evidence is legally and factually sufficient to support termination of appellant's parental rights under section 161.001(C).

We overrule appellant's second issue.[9]

## Best Interest

In her third issue, appellant argues that the evidence is legally and factually insufficient to prove that termination of her parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(2).

In determining whether the termination of appellant's parental rights was in the children's best interest, we may consider several factors, including (1) the children's desires, (2) the current and future physical and emotional needs of the children, (3) the current and future physical danger to the children, (4) the parental abilities of appellant, (5) whether programs are available to assist appellant in promoting the best interests of the children, (6) plans for the children by appellant, (7) the stability of the home, (8) acts or omissions of appellant that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of appellant. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The *Holley* factors are not exhaustive, and there is no requirement that DFPS prove all

---

[9]    Having concluded that the evidence is legally and factually sufficient to support termination of appellant's parental rights under section 161.001(1)(C), we need not address appellant's first issue in which she challenges the sufficiency of the evidence under section 161.001(E). *See In re A.V.*, 113 S.W.3d at 362.

factors as a condition precedent to parental termination. *See In re C.H.*, 89 S.W.3d at 27.

In regard to the children's desires, Phillips did testify that she "believe[d] that the kids want to see" appellant and would be "happy to see her." However, she also testified that the children do not ask about appellant and seem less "worried or upset" since Phillips started taking care of them. In regard to the present and future emotional and physical danger to the children, Phillips testified that she did not believe visiting appellant would endanger the children. However, Turcios, in his affidavit, indicated that appellant had hidden narcotics in flower pots around her home, took "Xanax bars" with her husband, and had left the children with Smith, who had failed to properly supervise the children. Tillis also testified that appellant had used "drugs and marijuana" and refused to take a court-ordered drug test. And appellant had been charged with the state jail felony offenses of theft and forgery, allegedly forging two checks from Smith, with whom appellant and her children had previously lived. A parent's prior use of narcotics and criminal history may support a finding that termination of parental rights is in the best interest of a child. *In re U.P.*, 105 S.W.3d 222, 231 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

In regard to the parenting abilities of the individuals seeking custody, Turcios, in his affidavit, established that neighbors had reported that appellant

would throw "parties until late at night" with "the kids running around unsupervised." Sowder reported that appellant "never [had] any food to eat for the children." And Phillips testified that when she first started caring for the children, they "weren't eating right," "were addicted to sugar," and had "horrible" sleep patterns. Phillips, however, cooked "every night" and kept the children "on a routine." In regard to any acts or omissions that may indicate the existing parent-child relationship is not proper, Phillips noted that when the children first came into her care, they were "afraid of being left" alone, as if Phillips "wasn't going to be there" or would not "pick them up from daycare." And Tillis testified that appellant would frequently leave the children with relatives and "take[] off."

In regard to programs available to assist appellant in promoting the best interests of the children, although Tillis testified that appellant had "completed some NA and AA classes and life skill classes," she also testified that appellant had failed to complete all the services under her "family plan of service." In regard to the stability of appellant's home, Turcios, in his affidavit, noted that Sowder had described the home as "messy and chaotic," and, at the time the affidavit was sworn, appellant was reportedly living at a temporary homeless shelter. Tillis testified that, "[i]n the beginning of the case, both parents were residing in a homeless shelter." And, at the time of trial, both Tillis and Phillips testified that appellant was incarcerated and scheduled to be released in November.

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court could have formed a firm belief or conviction that termination of appellant's parental rights was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(2). Furthermore, considering the entire record, although there is some evidence that the children wanted to see appellant and appellant had completed some classes as part of her service plan, we conclude that the trial court could still have formed a firm belief or conviction that termination of appellant's parental rights was in the children's best interests. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of appellant's parental rights was in the best interest of the children.

We overrule appellant's third issue.

### Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.